UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80334-CIV-MARRA

SEYMOUR ALTMAN, an individual and
MILDRED ALTMAN, an individual,

Plaintiffs,

vs.

LIFESPACE COMMUNITIES, INC., f/n/a
Life Care Retirement Communities, Inc., an
Iowa corporation, d/b/a HARBOUR'S EDGE,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant Lifespace Communities, Inc. f/n/a Life Care Retirement Communities, Inc. d/b/a Harbour's Edge's Motion to Dismiss First Amended Complaint (DE 36). The motion is fully briefed and ripe for review. The Court has carefully considered the motion and is otherwise fully advised in the premises.

1.  Background

Plaintiffs Seymour and Mildred Altman ("Plaintiffs") bring this eight-count First Amended Complaint against Defendant Lifespace Communities, Inc. f/n/a Life Care Retirement Communities, Inc. d/b/a Harbour's Edge ("Defendant") alleging: (1) a violation of Chapter 651 of the Florida Statutes (count one); (2) a violation of the Federal Requirements of Long Term Care Facilities pursuant to 42 U.S.C. § § 1395i-3(c)(5)(A)(ii), 1396r(c)(5)(A)(ii), 42 C.F.R. § 483.12(d)(2) pursuant to Florida Statutes § 651.083(1) (count two); (3) breach of contract (count three); (4) breach of fiduciary duty (count four); (5) unjust enrichment (count five); (6)

intentional infliction of emotional distress (count six) and (7) and declaratory judgment (count eight).[1]

According to the First Amended Complaint, Plaintiffs, a couple in their mid-eighties, entered into a 75% return of capital residency contract with Defendant, after meeting with Defendant's representative, Debbie Reynolds, in 2005. (First Am. Compl. ¶¶ 12, 20-21, DE 33; Contract, Ex. A, DE 33-1.) Prior to occupancy at this facility, Plaintiffs paid an entrance fee, a sponsorship fee, and a working capital fee, which equaled $393,970.00. The monthly minimum charge has increased over the years to $5,000 a month in 2010. (First Am. Compl. ¶ 21.) The contract provided that Plaintiffs could live at the facility for the rest of their lives and, upon death or contract termination, Plaintiffs could receive a refund of not less than 75% of the entrance fee. (First Am. Compl. ¶ 23.) In addition, Defendant promised a waiver and/or partial subsidy of the base "monthly charges" should they encounter financial difficulties. (First Am. Compl. ¶ 19.) Defendant provided Plaintiffs the right to occupancy in an independent living apartment and a right to skilled nursing care in the "health center," a licensed skilled nursing facility.[2] (First Am. Compl. ¶ 68).

In the spring of 2010, Plaintiffs realized their financial resources would be depleted in about six to eight months. They approached the executive director at the facility, Theresa Bertram, to find out how to "use the unearned portion of the entrance fee." (First Am. Compl. ¶ 29.) Ms. Bertram accused Plaintiffs of intentionally depleting their assets and resources and

---

[1] On February 1, 2012, Plaintiffs filed a notice of voluntary dismissal of the negligence claim (count seven).

[2] In August of 2010, Mrs. Altman spent 20 days in the health center. (First Am. Compl. ¶ 69.)

advised them they could not remain at the facility unless they secured a guarantor of the future monthly charges. (First Am. Compl. ¶¶ 30-31.) On November 11, 2010, Plaintiffs were told even if their balance was brought current, they would have to stay current on monthly service charges and fees and have a qualified guarantor. Plaintiffs were unable to make these payments without utilizing the unearned portion of the entrance fee and were forced to leave the facility. (First Am. Compl. ¶ 38; November 11, 2010 letter to Plaintiffs from Ms. Bertram,[3] Ex. D, DE 33-4.)

In moving to dismiss the First Amended Complaint, Defendant argues that the claim alleging a violation of federal requirements for long term care facilities does not apply because the allegations do not allege that either Plaintiff was a resident of the health center when they received the November 11, 2010 letter. Next, Defendant urges the Court to dismiss the breach of fiduciary duty claim on the basis that Plaintiffs have not properly alleged a fiduciary relationship and that the parties engaged in an arms-length transaction. Defendant also moves to dismiss the claim for intentional infliction of emotional dismiss based on the lack of allegations of outrageous verbal abuse. Lastly, Defendant contends the declaratory judgment claim is a restatement of count one and the declaratory judgment act does not provide for the entry of damages.

---

[3] The letter was copied to Defendant's chief operating officer and corporate legal counsel. (November 11, 2010 letter.)

## II. Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

III. Discussion[4]

    A.  Violation of Federal Requirements for Long Term Care Facilities Pursuant to Florida Statute § 651.083(1)

Defendant moves to dismiss this claim on the basis that the federal requirements for long-term care facilities are not applicable in the instant case.  Defendant asserts that because neither Plaintiff was a resident of its health center when they received the November 11, 2010 letter requiring, among other things, that they have a qualified guarantor who would be responsible for paying their monthly service fees and charges.

Chapter 651 of the Florida Statutes governs continuing care contracts.  "'Continuing care' or 'care' means, pursuant to a contract, furnishing shelter and nursing care or personal services to a resident who resides in a facility, whether such nursing care or personal services are provided in the facility or in another setting designated in the contract for continuing care, by an individual not related by consanguinity or affinity to the resident, upon payment of an entrance fee." Florida Statutes § 651.011.  As a condition to operate in Florida, continuing care facilities must offer nursing services.  Florida Statutes § 651.023(8).

Section 651.13 of the Florida Statutes provides that "[a]ny resident injured by a violation of this chapter may bring an action for the recovery of damages plus reasonable attorney's fees." Florida Statutes  § 651.13. Section 651.083 of the Florida Statutes provides, in pertinent part, that "[n]o resident of any facility shall be deprived of any civil or legal rights, benefits, or privileges guaranteed by law, by the State Constitution, or by the United States Constitution solely by

---

[4] In a diversity case, the Court applies Florida law. See Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1132-33 (11th Cir.2010); Royal Ins. Co. of America v. Whitaker Contracting Corp., 242 F.3d 1035, 1040 (11th Cir.2001).

5

reason of status as a resident of a facility." Florida Statutes § 651.083(1).

Under the federal Nursing Home Reform Act (NHRA), skilled nursing facilities[5] and nursing facilities[4] accepting Medicare and Medicaid assisted residents are governed by the NHRA.  See 42 U.S.C. § 1396a(28)(A) (2007); 42 U.S.C. § 1396r(b)-(d).  Pursuant to the NHRA, skilled nursing facilities and nursing facilities cannot "require a third party guarantee of payment to [its] facility as a condition of admission (or expedited admission) to, or continued stay in, [its] facility." 42 U.S.C. § 1395i–3(c)(5)(A)(ii); 42 U.S.C. § 1396r(c)(5)(A)(ii); see also 42 C.F.R. § 483.12(d)(2).

According to the contract entered into by the parties, "Harbour's Edge" is defined as the "facility known as Harbour's Edge, which is the subject of the Contract, including the apartments, Harbour's Edge Health Center, and all common areas." "Harbour's Edge Health Center" means "the health center forming a part of Harbour's Edge, which is intended to provide the nursing care as outlined in the Contract."  "Monthly charges" are "all those monthly charges payable pursuant to the terms of the Contract, including the Sustaining Fees, the Service Fees, the fees for optional services, the additional monthly fees for nursing care, and other fees and charges

---

[5] A "skilled nursing facility" is defined as an institution which "is primarily engaged in providing to residents skilled nursing care and related services for residents who require medical or nursing care, or rehabilitation services for the rehabilitation of injured, disabled, or sick persons, and is not primarily for the care and treatment of mental diseases. . . ." 42 U.S.C. § 1395i-3(a)(1).

[4] A "nursing facility" is an institution which is "primarily engaged in providing to residents skilled nursing care and related services for residents who require medical and nursing care, rehabilitation services for the rehabilitation of injured, disabled, or sick persons, or on a regular basis, health-related care and services to individuals who because of their mental or physical condition require care and services (above the level of room and board) which can be made available to them only through institutional facilities, and is not primarily for the care and treatment of mental diseases. . . ." 42 U.S.C. § 1396r(a).

payable monthly pursuant to the terms of the Contract, as appropriate in the particular circumstances." (Glossary, Contract.) Section 5.1 of the Contract provides, in part, that "[i]f you are temporarily assigned to the Harbour's Edge Health Center . . . we will provide nursing care in the Harbour's Edge Health Center without extra charge beyond your regular Monthly Charges." (Section 5.1, Contract).

  Taking into account the federal requirements prohibiting the imposition of a third-party guarantee in skilled nursing facilities and nursing facilities, and the incorporation of those requirements by Chapter 651 of the Florida Statutes, the Court finds that, by alleging that Defendant required a third-party guaranty from Plaintiffs, Plaintiffs have properly pled a violation of Florida law under Chapter 651. The Contract clearly provided that Plaintiffs were buying into a facility that provided, among other services, the right to nursing care. (Glossary and Section 5.1, Contract.) The Court rejects Defendant's contention that because Plaintiffs were not residents of the health center when they received the November 11, 2011 letter demanding the third-party guaranty, the requirements barring a third-party guaranty are not applicable.[5] (Mot. at 1-2; Reply at 2-3.) Indeed, the alleged demand by Defendant was, in essence, a condition placed upon Plaintiffs for continued enjoyment of all the benefits under the Contract, including access to the health center.

  Therefore, Defendant's motion to dismiss count two of the First Amended Complaint is denied.

---

[5] The Court notes that Plaintiffs allege the demand for the third-party guaranty began orally sometime after the Spring of 2010 and in writing on May 21, 2010 and June 2, 2010. (First Am. Compl. ¶¶ 29-32.)

### B. Breach of Fiduciary Duty

Defendant moves to dismiss this claim, contending that Plaintiffs have not properly alleged a fiduciary relationship and that the parties engaged in an arms-length transaction. Plaintiffs respond that a fiduciary duty can be implied, therefore no express acceptance need be pled. Furthermore, Plaintiffs assert that there can be no arms-length transaction when the relationship between the parties is of a continuing care facility and resident. (Resp. at 6-7.)

Courts have found a fiduciary relation implied in law when "confidence is reposed by one party and a trust accepted by the other." First Nat'l Bank and Trust Co. v. Pack, 789 So. 2d 411, 414-15 (Fla. Dist. Ct. App. 2001); see Maxwell v. First United Bank, 782 So. 2d 931, 933-34 (Fla. Dist. Ct. App. 2001). To find an implied fiduciary relationship, the specific factual circumstances surrounding the transaction and the relationship of the parties must be examined. First Nat'l Bank, 789 So.2d at 414-15; Maxwell, 782 So.2d at 933-34; Capital Bank v. MVB, Inc., 644 So. 2d 515, 518 (Fla. Dist. Ct. App. 1994).

In support of their argument that an implied fiduciary duty claim has been pled, Plaintiffs point out that the First Amended Complaint alleges that Defendant "demanded, received and controlled" Plaintiffs' money and property not for its own benefit, but for the benefit of Plaintiffs and that Plaintiffs "entrusted substantially all of their remaining assets" "in exchange for [Defendant's] promise to provide them with food, shelter, and medical care on an on going basis for the remainder of their lives." (Resp. at 5-6 citing First Am. Compl. ¶ 82.)  These obligations, however, are nothing more than the duties envisioned under the contract and to which the parties agreed. Noticeably absent from the First Amended Complaint are any allegations regarding confidence being accepted by Defendant. Indeed, none of the allegations discuss the specific

8

nature of the relationship between the parties and how the relationship of trust and confidence arose. Nor does the claim state that the breach of fiduciary duty should be implied from the relationship of the parties. Hence, Plaintiffs have not properly pled a breach of implied fiduciary duty.

Moreover, the Court rejects Plaintiffs' contention that this transaction was not arms-length because the law required compliance with Chapter 651 of the Florida Statutes, and therefore the terms were not negotiable. It is precisely the state's involvement that serves to protect the elderly who enter into these types of contracts. See Fla. S. Comm. on Health and Rehabilitative Services, Senate Staff Analysis and Economic Statement, SB 885, at 5 (Apr. 25, 1977) (on file with State Archives) ("required contract provisions are expanded and made more specific in order to protect the consumer"); Florida Statutes § 651.01 (repealed 1977).[6]

Based on the foregoing, the Court dismisses this claim. The Court will, however, grant Plaintiffs leave to amend, assuming they can do so in good faith.

C. Unjust Enrichment

Defendant moves to dismiss this claim on the basis that "since there is an express contract in this matter, [ ] Plaintiffs may not pursue the equitable theory of unjust enrichment." (Mot. at 4.) The Court rejects this argument.

---

[6] Legislative determination. - It is hereby determined by the legislature that the execution of care agreements for life or for a term of years and the business of those who engage by contract to furnish such care, are matters charged with a public interest; that heretofore abuses have been practiced in relation to execution of such agreements, acquisition of property as consideration therefor, and the conduct of such business; that such persons presently engaged in such business in this state and those who may engage in said business, and such businesses, should be regulated, and that this chapter which regulates such persons and businesses is a valid exercise of the police power of Florida in relation thereto. Florida Statutes § 651.01 (repealed 1977).

At the pleading stage, Plaintiffs are not precluded from pleading claims for both breach of contract and unjust enrichment. See Williams v. Bear Stearns & Co., 725 So. 2d 397, 400 (Fla. Dist. Ct. App.1998) ("Until an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment on these grounds is premature."); see also Rule 8(d)(2) of the Federal Rules of Civil Procedure ("a party may set out 2 or more statements of a claim or defense alternatively or hypothetically"); Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009) citing Manicini Enterprises, Inc. v. American Exp. Co., 236 F.R.D. 695, 698-99 (S.D. Fla. 2006) (a plaintiff may plead inconsistent or alternative theories of relief). For this reason, the Court denies Defendant's motion to dismiss for failure to state a claim.

D.  Intentional Infliction of Emotional Distress

Under Florida law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Eastern Airlines, Inc. v. King, 557 So. 2d 574, 575-76 (Fla.1990) (quoting Restatement (Second) of Torts § 46 (1965)). The tort of intentional infliction of emotional distress is comprised of the following elements:

> (1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result;
> (2) The conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;
> (3) The conduct caused emotional distress; and
> (4) The emotional distress was severe

Stewart v. Walker, 5 So. 3d 746, 749 (Fla. Dist. Ct. App. 2009) (quoting LeGrande v. Emmanuel, 889 So. 2d 991, 994 (Fla. Dist. Ct. App. 2004)). For a defendant's conduct to qualify as "extreme

and outrageous," it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278 (Fla.1985) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Scheller v. Am. Med. Int'l, Inc., 502 So. 2d 1268, 1271 (Fla. Dist. Ct. App.1987) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Courts decide the outrageousness of a defendant's conduct as a matter of law. See, e.g., Vamper v. United Parcel Service, Inc., 14 F. Supp. 2d 1301, 1306 (S.D. Fla.1998); Johnson v. Thigpen, 788 So. 2d 410, 413 (Fla. Dist. Ct. App. 2001); Gandy v. Trans World Computer Tech. Group, 787 So. 2d 116, 119 (Fla. Dist. Ct. App. 2001); Ponton v. Scarfone, 468 So. 2d 1009, 1011 (Fla. Dist. Ct. App.1985).

Plaintiffs assert that Defendant telling them that they overspent their resources and directing them to eliminate long-term care insurance and Christmas presents, as well as asking for a third-party guarantor, constitutes extreme and outrageous conduct. They also claim that Defendant's comment to Plaintiffs' attorney that Plaintiffs spent $1.2 million in five years is verbal abuse. (Resp. at 12.) The Court disagrees and finds that these statements do not meet the standard for outrageousness of a defendant's conduct as a matter of law. Indeed, the comments referenced do not even constitute verbal abuse. Cf. De La Campa v. Grifols Am., Inc., 819 So. 2d 940, 943-44 (Fla. Dist. Ct. App. 2002) ("Florida courts have been reluctant to find claims for intentional infliction of emotional distress based solely on allegations of verbal abuse").

Plaintiffs, however, rely on Dominguez v. Equitable Life Assur. Soc. of U.S., 438 So. 2d 58 (Fla. Dist. Ct. App. 1983) in support of their position. In that case, the plaintiff's insurance agent falsely represented to the plaintiff, who had been receiving payments under the insurance

policy for his complete disability, that the agent had received a letter from the plaintiff's doctor saying that the plaintiff was no longer disabled. The agent further stated to the plaintiff that he was no longer covered under the policy and sought to have the plaintiff sign a paper stating that no further payments were due. The agent knew at the time the statements were made that they were false. Id. at 62. Plaintiffs argue that, as in Dominguez, their status as elderly and infirm is similar to the Dominguez plaintiff's disability. Even accepting that comparison, Plaintiffs in the instant case did not allege an "assertion of power" by Defendant "without justification." Id. Instead, the First Amended Complaint alleges that Plaintiffs sought help from Defendant once they realized their financial assets would soon be depleted.[7] (First Am. Compl. ¶ 29.)

For these reasons, the Court hereby dismisses the claim for intentional infliction of emotional distress.

E. Declaratory Judgment

Defendant seeks dismissal of this count because the count merely restates the allegations in count one of the First Amended Complaint and because no early adjudication of the controversy can be obtained.

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §

---

[7] Nor does the Court find Plaintiffs' reliance on Doe v. Board of County Commissioners, 815 F. Supp. 1448 (S.D. Fla. 1992) persuasive. There, the court ruled that the plaintiff's allegations that her work supervisor knew of her mental handicap, harassed her for tardiness and absences caused by the handicap and pestered the plaintiff with questions about the handicap constituted "outrageous"conduct. Id. at 1450. While Plaintiffs' elderly status could be compared to the "special circumstances" of the mentally handicapped, the conduct alleged here does not rise to the egregious conduct present in Doe.

2201(a). In deciding whether to entertain a declaratory judgment action, district courts are provided "ample" discretion. See Kerotest Manufacturing, Co. v. C–O–Two Fire Equipment Co., 342 U.S. 180, 183–84 (1952) ( "an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts" in their decision to adjudicate declaratory judgment claims).

The declaratory judgment is an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy, and an adjudication would serve a useful purpose." Allstate Ins. Co. v. Employers Liability Assur. Corp., 445 F.2d 1278, 1280 (5th Cir.1971).[8] Rule 57 of the Federal Rules of Civil Procedure provides that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57; Fed. R. Civ. P. 57 1937 Advisory Committee Notes ("the fact that another remedy would be equally effective affords no ground for declining declaratory relief. The demand for relief shall state with precision the declaratory judgment relief, cumulatively or in the alternative. . . .") Accordingly, courts have held that the existence of another remedy does not preclude declaratory relief. See Powell v. McCormack, 395 U.S. 486, 517–18 (1969); Continental Casualty Co. v. Coastal Savings Bank, 977 F.2d 734, 737 (2d Cir.1992); Greater Los Angeles Council on Deafness v. Zolin, 812 F.2d 1103, 1112 (9th Cir.1987); Tierney v. Schweiker, 718 F.2d 449, 457 (D.C. Cir.1983).

---

[8] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

With this in mind, the Court will permit the declaratory judgment action to proceed. As pled, the declaratory judgment claim properly alleges Plaintiffs' need for a declaration regarding their rights. See Johnson v. GEICO Ins. Co., 08–80740–CIV, 2008 WL 4793616, at * 3 (S.D. Fla. Nov.3, 2008) (rejecting the "argument that the declaratory judgment claim should not be entertained when the breach of contract claim provides [the p]laintiff with full and adequate relief"). Therefore, the fact that Plaintiffs have also brought an action for breach of contract does not prevent it from also seeking a declaratory judgment regarding the rights and obligations of the parties under the agreements. Id. (citing City of Leominster v. Pittsburgh–Des Moines Steel Co., 201 F. Supp. 66, 68 (D. Mass.1962) (allowing declaratory judgment claim as well as breach of contract claim to proceed)).[9]

---

[9] The Court rejects Defendant's application to strike the requests for damages under this count.  "The Declaratory Judgment Act empowers courts, in conjunction with a judgment or decree, to provide any further necessary or proper relief, 28 U.S.C. § 2202, which has been held to include an award of damages." Sonic Momentum B, LP v. Motorcars of Distinction, Inc., No. 11-80591-CIV, 2011 WL 4738190, at * 3 (S.D. Fla. Oct. 7, 2011) (citing Security Ins. Co. of New Haven v. White, 236 F.2d 215, 220 (10th Cir.1956)) (internal quotations marks omitted); see also Texasteel Mfg. Co. v. Seaboard Sur. Co., 158 F.2d 90, 91 (5th Cir.1947) ("the granting of a money judgment in the case after the rendition of a declaratory decree was not error").

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss First Amended Complaint (DE 36) is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs shall file an amended complaint **within 14 days of the date of entry of this Order**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 8th day of February, 2012.

_____
KENNETH A. MARRA
United States District Judge