UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80334-CIV-MARRA

SEYMOUR ALTMAN, an individual and
MILDRED ALTMAN, an individual,

Plaintiffs,

vs.

LIFESPACE COMMUNITIES, INC., f/n/a
Life Care Retirement Communities, Inc., an
Iowa corporation, d/b/a HARBOUR'S EDGE,

Defendant.
_____/

# OPINION AND ORDER[1]

This cause is before the Court upon Plaintiffs Seymour Altman and Mildred Altman's Motion to Dismiss and/or Motion for Summary Judgment on the Defendant's Counterclaim (DE 91). The motion is fully briefed and ripe for review. The Court has carefully considered the motion and is otherwise fully advised in the premises.

I. Background

On March 27, 2012, Defendant Lifespace Communities, Inc. f/n/a Life Care Retirement Communities, Inc.[2] d/b/a Harbour's Edge ("Defendant") filed its Amended Answer and Affirmative Defenses with Counterclaim. (DE 90.) Defendant brings a three-count counterclaim

---

[1] The Court presumes familiarity with its prior Orders, including the recently-entered Order denying Defendant's motion for summary judgment and granting in part and denying in part Plaintiffs' motion for summary judgment. (DE 96.) This Order incorporates the facts set forth therein. To the extent new facts were submitted and deemed relevant to this Order, the Court has integrated those facts into section III of this Order.

[2] Life Care Retirement Communities, Inc. is also known as "LCRC."

for fraud in the inducement (count one) and breach of contract (counts two and three). The counterclaim alleges the following:

Plaintiffs sought to enter into a 75% Return of Capital Residency Contract ("Contract") in order to reside at Harbour's Edge, a lifecare community. The contract required minimum total assets for residency.[3] (Counterclaim ¶ 1.) Plaintiffs spoke with representatives of Defendant's facility at Harbour's Edge and visited the facility. (Counterclaim ¶¶ 2-3.) At the same time, Plaintiffs visited another facility which required them to complete a residency application listing assets and liabilities. (Counterclaim ¶ 4.) That form, completed on September 26, 2005, indicated that Plaintiffs' net worth was $818,942.00. (Counterclaim ¶ 6; Financial Data Form, Ex. 5, DE 91-6.) On October 25, 2005, Plaintiffs completed Defendant's confidential data application[4] ("CDA-1", Ex. 6, DE 91-6), which listed their total combined financial assets as $1,105,948.[5] (Counterclaim ¶ 7.) Subsequently, on November 18, 2005, Plaintiffs executed the Contract with Defendant, which required them to have minimum assets to afford the entrance fees, monthly service fees and several other fees. (Counterclaim ¶ 8.) Plaintiffs represented that their total funds were sufficient to last through the life of the contract. (Counterclaim ¶ 9.)

Four and one-half years later, Plaintiffs informed Defendant that their funds were depleted and requested a hardship discount in the form of a waiver of their $4,911.00 monthly

---

[3] Defendant's counterclaim incorporates the contract. (Counterclaim ¶ 1; Contract, DE 33-1.)

[4] Defendant's counterclaim incorporates both the financial data and the CDA-1 forms. (Counterclaim ¶¶ 6-7.)

[5] The CDA-1 does not include the term "net worth." Instead, it uses the term "total combined financial assets." (CDA-1.)

fees. (Counterclaim ¶ 10.) As a prerequisite for consideration of a hardship discount, Plaintiffs completed a second CDA (CDA-2), which indicated only $4,000.00 in savings. (Counterclaim ¶ 12.) Despite several requests from Defendant, Plaintiffs did not provide the necessary proof required for the hardship discount. (Counterclaim ¶ 15.) Defendant requested that Plaintiffs find a guarantor to secure future monthly service fees, but Plaintiffs were unable to do so and fell two months behind in paying their monthly service fees. (Counterclaim ¶¶ 16-17.) On November 11, 2010, Defendant gave Plaintiff's notice of non-payment of fees and demanded they bring their account current in 30 days or their contract would be cancelled. (Counterclaim ¶ 19.) Plaintiffs were able to pay the delinquent fees they owed, but refused to do so. (Counterclaim ¶ 20.) After Plaintiffs failed to bring their account current, Defendant cancelled Plaintiffs' contract for non-payment of fees. (Counterclaim ¶ 22.)

With respect to the claim for fraudulent inducement, count one alleges that Plaintiffs made material misrepresentations about their net worth with the intention that Defendant would rely on them. (Counterclaim ¶¶ 25-27.) Without those misrepresentations, Defendant would not have entered into the contract with Plaintiffs. (Counterclaim ¶¶ 28-29.) The breach of contract claim in count two alleges that Plaintiffs failed to pay the monthly service fees for the months of November and December 2010 in the amount of $10,037.94, despite the fact that they had in their checking account more than twice the amount for the monthly service fees due and owing. (Counterclaim ¶¶ 35-36.) This failure to pay caused Defendant significant monetary loss. (Counterclaim ¶ 40.) Lastly, the breach of contract claim in count three alleges that Plaintiffs failed to pay the monthly sustaining fees and monthly service fees (Counterclaim ¶ 42A-B), failed to establish facts to justify deferral of the usual charges after declaring an inability to meet

contractual obligations (Counterclaim ¶ 42C), failed to meet their financial obligations by impairing their ability to do so or by intentionally depleting their resources through gifts or other transfers (Counterclaim ¶ 42D), violated section 12.16 of the Contract by failing to reimburse Defendant for losses caused by the breach of the contract (Counterclaim ¶ ¶43-44) and violated section 15 of the contract by making false representations as to their assets and income (Counterclaim ¶ 45).

On October 18, 2011, Defendant's counsel made initial discovery disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure. That letter stated, "Since our client, Lifespace, is not the party seeking recovery of damages, it does not presently have any computation of any category of damages. Should we . . . discover additional categories of documents, we will provide that information to you." (October 18, 2011 letter from Defendant's counsel to Plaintiffs' counsel, Ex. 1, DE 91-1.) On March 27, 2012, after the filing of the counterclaim, Plaintiffs' counsel asked Defendant to "comply with Rule 26 forthwith not only on the matter of damages, but the documents that you are relying upon and the witnesses that will support your claims." (March 27, 2011 email from Plaintiffs' counsel to Defendant's counsel, Ex. 2, DE 91-2.)  On March 29, 212, Defendant produced to Plaintiffs a summary of damages calculation prepared on February 6, 2012. (Summary of Damages, Ex. 3, DE 91-3.) Upon receipt, Plaintiffs' counsel requested supplemental discovery relative to that disclosure. (March 29, 2012 email from Plaintiffs' counsel to Defendant's counsel, Ex. 4, DE 91-4.) Defendant's counsel responded in part that, "Discovery closed January 3." (March 29, 2012 email from Defendant's counsel to Plaintiffs' counsel, Ex. 4, DE 91-4.)

Plaintiffs move for dismissal and summary judgment on the counterclaims. They contend

that the fraud in the inducement counterclaim fails to show any misrepresentation by Plaintiffs. With respect to the breach of contract counterclaim, Plaintiffs contend Defendant has not complied with conditions precedent, failed to demonstrate damages, and the contract does not, as a matter of law, give rise to the breaches claimed by Defendant. In addition, Plaintiffs complains that Defendant failed to provide timely discovery relating to damages.

II.  Legal Standard

A. Motion to Dismiss

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a

plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### B. Summary Judgment

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

6

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III. Discussion[6]

A. Fraud in the Inducement

To prevail on a claim for fraud in the inducement, Defendant needs to show that Plaintiffs: (1) misrepresented a material fact; (2) knew or should have known of the statement's falsity; (3) intended that the representation would induce Defendant to rely and act on it and (4) injured Defendant who was acting in justifiable reliance on the representation. See Globetec Construction, LLC v. Custom Screening & Crushing, Inc., 77 So. 3d 802, 803 (Fla. Dist. Ct. App. 2011); Brinker v. W.P. McDevitt & Associates, Inc., 693 So. 2d 712, 712 (Fla. Dist. Ct. App. 1997); Lou Bachrodt Chevrolet, Inc. v. Savage, 570 So. 2d 306, 307 (Fla. Dist. Ct. App. 1990).

Defendant's counterclaim alleges that Plaintiffs misrepresented their net worth, as evidenced by the discrepancy between the financial information provided on the financial data form and the CDA-1 form. Specifically, Defendant claims Plaintiffs knew their net worth was

---

[6] In a diversity case, the Court applies Florida law. See Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1132-33 (11th Cir. 2010); Royal Ins. Co. of America v. Whitaker Contracting Corp., 242 F.3d 1035, 1040 (11th Cir. 2001).

less than what they claimed on the CDA-1 form.  However, only the financial data form requested a net worth calculation.  The CDA-1 form provided by Defendants, and completed by Plaintiffs, did not request Plaintiffs' net worth. Instead, the CDA-1 form asked for "total combined financial assets."  Specifically, on the CDA-1 form Plaintiffs provided the figure of $1,105,948, after the entry that states "total combined financial assets."  To the right of that number, Plaintiffs provided under "long term liabilities," "mortgage bal. $224,000."  (CDA-1 form.)  In contrast, the financial data form lists "total assets" as $1,105, 948, the home mortgage as a liability of $224,000, and net asset balance of $881,948. (Financial Data Form.)  Thus, the financial data form included a line item which called for the mathematical calculation of deducting the mortgage liability from the total assets to provide a net worth or net assets figure.  On the other hand, the CDA-1 form did not include a line item that called for the net worth or net assets calculation.  The data from which that calculation could have been made, however, was contained on the form.

     Because Plaintiffs provided the information sought by the two distinct forms in the manner requested, and because Plaintiffs provided all the information to Defendant from which Defendant could have calculated a net worth or net assets figure, the Court finds that, as a matter of law, that Plaintiffs did not make a material misrepresentation or omission.  Because the relevant documents are incorporated into the pleadings and because Plaintiffs also seek summary judgment on this count, the Court grants both the motion to dismiss and summary judgment on counterclaim one.

B.  Breach of Contract

The elements of the cause of action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. See Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla .Dist. Ct. App. 2006); A.R. Holland, Inc. v. Wendco Corp., 884 So. 2d 1006, 1008 (Fla. Dist. Ct. App. 2004).  Here, Defendant alleges that Plaintiffs breached the contract in several different ways: (1) failing to pay monthly service sustaining fees due in violation of section 2.1[7] of the contract; (2) failing to establish facts to justify deferral of usual charges after declaring an inability to meet contractual obligations in violation of section 8.2.2[8] of the contract; (3) failing to meet their financial obligations by intentionally depleting their resources through gifts or other transfers in violation of section 8.2.2 of the contract; (4) failing to reimburse Defendant for losses caused by Plaintiff's breach of the contract in violation

---

[7] 2.1 You shall pay a Sustaining Fee of $50 a month for occupying your apartment or the Harbour's Edge Health Center. There shall be no increase in your Sustaining Fee during the term of this Contract. The Sustaining Fee shall be LCRC's unrestricted property, and may be used by LCRC for any purpose related or unrelated to Harbour's Edge, in LCRC's sole discretion. (Section 2.1, Contract.)

[8] 8.2.2 Because it is and shall continue to be the declared policy of LCRC to operate as a nonprofit organization and not to terminate your residency solely by reason of your financial inability to pay the total Monthly Charges, you shall be permitted to remain at Harbour's Edge at reduced Monthly Charges, based on your ability to pay for so long as you establish facts to justify deferral of usual charges, and the deferral of such charges can, in the sole discretion of LCRC, be granted without impairing the operation of Harbour's Edge on a sound financial basis.  The provisions of this Paragraph shall not apply if you have impaired your ability to meet your financial obligations hereunder by intentionally depleting your resources through gifts or other transfers or by not maintaining Medicare Part A, Medicare Part B, and adequate supplemental insurance coverage. To evidence the terms of the deferral of such charges, you agree to enter into a special hardship agreement with LCRC at the time of any such deferrals to reflect the reduced charges currently required. The Entrance Fee refund will be offset against any deferred charges. (Section 8.2.2, Contract.)

of section 12.16[9] of the contract and (5) making false representations as to their assets and incomes in violation of section 15[10] of the contract. (Counterclaim ¶ ¶ 39, 42A-D-45.)

With respect to the allegation that Plaintiffs failed to establish facts to justify deferral of usual charges after declaring an inability to meet contractual obligations and failed to meet their financial obligations by intentionally depleting their resources through gifts or other transfers, Plaintiffs seek dismissal on the ground that Defendant has not pled damages. The Court disagrees and instead finds that Defendant has pled that this alleged breach caused it to suffer damages. (Counterclaim ¶ 46.)

Likewise, the Court rejects Plaintiffs' argument that summary judgment is appropriate on this count because Defendant has not met a condition precedent as required under the contract.[11] Plaintiffs point to record evidence that shows that Defendant only provided the necessary written notice to Plaintiffs regarding the failure to pay their monthly service fees. (James Biere Dep. 49, 61, 71, 130, DE 71-1; November 11, 2011 letter and attached bill from Ms. Bertram to Plaintiffs,

---

[9] 12.16 You or your responsible party, if applicable, shall reimburse us for any loss or damage to Harbour's Edge as a result of your intentional, careless, or negligent acts or omissions or that of your guests. (Section 12.16, Contract.)

[10] 15. By executing this Contract you represent and warrant that you are capable of independent living as defined in our current admissions policy, that you have assets and income which are sufficient under foreseeable circumstances and after provision for payment of your obligations under this Contract to meet your ordinary and customary living expenses after assuming occupancy, and that all written representations made with respect to such matters by your or on your behalf to LCRC are true. (Section 15, Contract.)

[11] 8.3 Prior to any termination of the Contract by LCRC, LCRC will give you notice in writing of the reasons, and you will have thirty (30) days thereafter within which the problem may be corrected. If the problem is corrected within such time, this Contract shall not be terminated. If the problem is not corrected within such time, this Contract will be terminated and you must leave Harbour's Edge. . .

Ex. Z to Bertram Dep., DE 68-6 .) Regardless, that evidence demonstrates nothing more than Defendant's inability under the contract to <u>terminate</u> for the reasons alleged in paragraphs 42(C) and (D). It does not preclude Defendant from pursuing a breach of contract claim based upon those same allegations.

Turning next to Defendant's claim that Plaintiffs violated section 12.16 of the Contract by failing to reimburse Defendant for losses caused by the breach of the contract (Counterclaim ¶¶ 43-44), the Court concludes, as a matter of law, that Plaintiffs did not breach this provision.

That provision of the contract provides:

> Reimbursement for Loss or Damage. You and your responsible party, if applicable, shall reimburse us for any loss or damage to Harbour's Edge as a result of your intentional, careless, or negligent acts or omissions or that of your guests.

(Section 12.16, Contract.)

The glossary to the contract explains that "us" means "LCRC" or Lifespace Care Retirement Communities, the sponsor of Harbour's Edge. Additionally, "Harbour's Edge" is described as the "facility," including the apartments, Harbour's Edge Health Center, and all common areas. (Glossary, Contract.) It is apparent from a reading these provisions that LCRC is the contracting party and Harbour's Edge is the physical premises. Plaintiffs could only be responsible for a breach of this contractual provision by failing to reimburse Defendant for damages caused to the physical premises. No such damages is alleged in this case.[12] Defendant's attempt to rely upon section 12.16 as a basis for seeking reimbursement of losses alleged in this case is misplaced. Therefore, the Court

---

[12] This conclusion is buttressed by the fact that section 12.16 also imposes liability on Plaintiffs for losses caused by their guests. Since Plaintiffs' guests are not contracting parties, it is obvious that the quests could not cause contractual damages to Defendant. The only damage Plaintiffs' quests could cause Defendant would be tort damages to Defendant's premises.

finds, as a matter of law, that a right to reimbursement for the type of loss claimed by Defendant in this case does not flow from section 12.16. Hence, Defendant's attempt to seek compensatory damages, as alleged, based on section 12.16 of the contract is rejected. For that reason, the Court grants both the motion to dismiss and the motion for summary judgment with respect to the alleged violation of section 12.16 of the contract.[13]

Lastly, the Court finds that Defendant has properly pled a breach of contract claim with respect to its assertion that Plaintiffs failed to pay the required monthly fees.[14] At the same time, it appears count two and a portion of count three address this same breach; namely, Plaintiffs' failure to pay the monthly service fees. For that reason, the Court will dismiss counterclaim two as duplicative, but permit this claim to go forward as set forth in counterclaim three.

The Court will now address summary judgment on counterclaim three. Evidence submitted by Plaintiffs shows that Defendant issued a check to them which represented "repayment in full for the sale of the Residency Contract." The check included the entrance fees, less the processing and occupancy amortization, and less the *balance due* of $16,522.71. (January 24, 2011 letter, Composite Ex. 7, DE 91-7.)

---

[13] Based on the reasons for dismissal of the fraudulent inducement claim, the Court also finds, as a matter of law, that Defendant cannot sustain a claim for breach of contract based on its claim that Plaintiffs violated section 15 of the Contract by making false representations regarding their assets and incomes.

[14] Plaintiffs contend that Defendant's eighth affirmative defense, which claims a set-off, indicates that Defendant deducted all monthly fees from the refund provided to Plaintiffs, and thus demonstrates that Defendant had no damages related to the alleged breach of non-payment of the monthly fees. Defendant's counterclaim did not incorporate the affirmative defenses, making those affirmative defenses outside of the pleading. Thus, the Court will not consider this on a motion to dismiss.

Nonetheless, Defendant points to a summary of damages calculation which was prepared on February 6, 2012 and produced to Plaintiffs on March 29, 2012 to demonstrate that it suffered additional damages due to Plaintiffs' breach of contract. (Summary of Damages, Ex. 3, DE 91-3.) Plaintiffs point out that Defendant did not supplement its Rule 26(a)(1) disclosure until after discovery ended, and Defendant had not made available the documents or other evidentiary material upon which the damages computation is based for inspection or copying. (Mot. at 21-22.)  Plaintiffs state that this failure to disclose is not harmless because they were unable to conduct necessary discovery on the counterclaims. Defendant responds that there was no specific deadline for filing a counterclaim and it produced the damages information soon after filing the counterclaim. Moreover, Defendant faults Plaintiffs for failing to file a motion with the Court to seek this information. (Resp. at 14.)

Although the Court agrees with Defendant that there was nothing improper about Defendant filing its Amended Counterclaim on March 27, 2012, the Court finds that Plaintiffs are prejudiced by Defendant's disclosure of a claim for damages arising from its counterclaim after discovery closed.  Moreover, the Court agrees with Plaintiffs that they need further discovery regarding how the Defendant calculated its damages. Indeed, upon its own review of the summary of damages calculation, the Court is unable to understand the import of each item on the document.  For that reason, the Court will reopen discovery for the sole purpose of allowing Plaintiffs to seek information regarding Defendant's claim for damages arising from the remaining portion of the breach of contract claim (Counterclaim ¶ ¶ 42(A)-(B).)  As such, the Court will deny summary judgment on this count.  Given that this case is proceeding to trial, and there is adequate time to engage in this limited discovery before trial, Defendant will not be

precluded from seeking these damages at trial.

### IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Motion to Dismiss and/or Motion for Summary Judgment on the Defendant's Counterclaim (DE 91) is **GRANTED IN PART AND DENIED IN PART.**  Discovery is reopened for the limited purpose set forth in this Order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 18th  day of June, 2012.

_____
KENNETH A. MARRA
United States District Judge